IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| VELMA SUE BATES, CLAUDIA | ) | |
| BIRDYSHAW, WILLARENE FISHER, | ) | |
| MARK LONG, JON TOUNGETT, | ) | |
| CAROLYN WADE, and RICHARD WHITE | ) | |
| | ) | Case No.: _____ |
| Plaintiffs, | ) | JURY DEMAND |
| | ) | |
| vs. | ) | |
| | ) | |
| DURA AUTOMOTIVE SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

_____

VERIFIED COMPLAINT
_____

COMES NOW the Plaintiffs, by and through counsel, and seek declaratory, injunctive and

equitable relief, compensatory and punitive damages, back and front pay, and attorneys fees, court

costs, discretionary costs and all other damages to which they are entitled, for violation of the Age

Discrimination Employment Act ("ADEA"), the Tennessee Human Rights Act ("THRA"), the

Americans with Disabilities Act, breach of contract and invasion of privacy suffered by Plaintiffs while

employed by Defendant.  Pursuant to the Age Discrimination in Employment Act of 1967, and the

Tennessee Human Rights Act, Plaintiffs seek to correct unlawful employment practices based on age.

## THE PARTIES

1.      Plaintiff Velma Sue Bates is a fifty-eight (58) year old female, a citizen of the United

States of America, and a resident of Lawrence County, Tennessee.

2.      Plaintiff Claudia Birdyshaw is a forty-two (42) year old female, a citizen of the United

-1-

States of America, and a resident of Lawrence County, Tennessee.

3.      Plaintiff Willarene Fisher is a sixty (60) year old female, a citizen of the United States of America, and a resident of Lawrence County, Tennessee.

4.      Plaintiff Mark Long is a thirty-five (35) year old male, a citizen of the United States of America, and a resident of Lawrence County, Tennessee.

5.      Plaintiff Jon Toungett is a forty-nine (49) year old male, a citizen of the United States of America, and a resident of Lawrence County, Tennessee.

6.      Plaintiff Caroline Wade is a forty-six (46) year old female, a citizen of the United States of America, and a resident of Lawrence County, Tennessee.

7.      Plaintiff Richard White is a forty-five (45) year old male, a citizen of the United States of America, and a resident of Lawrence County, Tennessee.

8.      Defendant Dura Automotive Systems, Inc. ("Dura Automotive") is a Tennessee corporation whose agent for service of process registered with the Tennessee Secretary of State is Glenn Weaver, 155 North Conalco Drive, Jackson, Gainsboro County, Tennessee 37301. Defendant Dura Automotive is a manufacturer specializing in automotive, glass systems, and related structures and engineered assemblies.

9.      On information and belief, Defendant Dura Automotive has continually employed at least fifty (50) employees and has continuously been, and is now, an employer engaged in an industry affecting commerce within the meaning of §701(b), (g), and (h) of Title VII.

## JURISDICTION AND VENUE

10.     This action arises in part under Title VII, the Age Discrimination in Employment Act

of 1967, 29 U.S.C. 621 *et seq.*; the Tennessee Human Rights Act; and, the common and codified law of the State of Tennessee.

11.     Jurisdiction over the federal issues is invoked pursuant to 28 U.S.C. §§1332 and 1343 and related provisions; and over the state law claims pursuant to the doctrine of pendent jurisdiction. Venue is proper because the events alleged substantially occurred in the Middle District of Tennessee at Defendant Dura Automotive's place of business in Lawrence County, Tennessee.

12.     This action properly lies in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(b), for the claim arose in this judicial district, and pursuant to 42 U.S.C. §2000e-5(f)(3), for the unlawful employment practices substantially were committed in this judicial district and this district is where, upon information and belief, the employment records of Plaintiff are located.

13.     All conditions precedent to this action and to jurisdiction have occurred or been complied with, to-wit: a charge of employment discrimination was filed with the Equal Employment Opportunity Commission within 180 days and within 300 days of the commission of the unfair employment practice; a Notification of Right to Sue was issued by the Equal Employment Opportunity Commission on April 30, 2008; this Complaint was filed within ninety (90) days of receipt of the Notification of Right to Sue. The EEOC was unable to conclude that the information obtained established violation of the statutes.

-3-

# FACTUAL ALLEGATIONS

## *Velma Sue Bates*

14.     Approximately 22 years ago, Plaintiff Velma Sue Bates became employed with Defendant Dura Automotive. Plaintiff Velma Sue Bates worked on various manufacturing production lines during the course of her employment. She worked assembling bus windows on the mass transit bus production line during the last six months of her employment.

15.     Plaintiff Velma Sue Bates's job duties included inspecting molded windows and applying any components that were need.  Plaintiff Velma Sue Bates used an airgun, scissors, screwdrivers, and a trimming knife to perform her work.

16.     Plaintiff Velma Sue Bates suffers from chronic back pain caused in full or in part by the repeated stress of lifting heavy pieces of glass while working in the assembly process at Defendant Dura Automotive. Plaintiff Velma Sue Bates also suffers from depression, anxiety, bipolar disorder, narcoplepsy, and ADHD.

17.     Plaintiff Velma Sue Bates is on several medications for her medical conditions all of which were prescribed under the supervision of her doctor.

18.     Plaintiff Velma Sue Bates has never had any safety violations while on her prescribed medications while working for Defendant Dura Automotive.

19.     On or about May 7, 2007,  Defendant Dura Automotive implemented a drug free workplace program.

20.     On May 10, 2007, Plaintiff Velma Sue Bates arrived at work and was required to submit to a drug test.

-4-

21. Plaintiff Velma Sue Bates reported to a common area where numerous other employees were waiting to be tested. Plaintiff Bates gave the requested urine sample.

22. Plaintiff Velma Sue Bates observed that the nurses did not change their gloves before receiving each sample.

23. Plaintiff Velma Sue Bates waited in the common area until the test was complete. The nurse who tested Plaintiff Velma Sue Bates's sample publicly announced in front of all employees in the area that Plaintiff Velma Sue Bates tested positive for the presence of certain chemicals in her urine sample.

24. On October 10, 2007, Plaintiff Velma Sue Bates was terminated from her position at Defendant Dura Automotive.

### *Claudia Birdyshaw*

25. Approximately 22 years ago, Plaintiff Claudia Birdyshaw became employed with Defendant Dura Automotive working in the assembly of glass systems for installation on buses and other motor vehicles.

26. Plaintiff Claudia Birdyshaw worked at a station that required her to lift heavy glass pieces used in bus windows.

27. Plaintiff Claudia Birdyshaw's job duties included applying rubber seals between the window and a frame for use in bus windows. Plaintiff Claudia Birdyshaw used scissors to cut the rubber gasket material, but had no contact with any tools or machinery that can be considered dangerous to any other person.

28. Plaintiff Claudia Birdyshaw suffers from chronic back pain caused in full or in part by the repeated stress of lifting heavy pieces of glass while working in the assembly

-5-

process at Defendant Dura Automotive.

29. Plaintiff Claudia Birdyshaw is on several medications for back pain prescribed under the supervision of her doctor.

30. Plaintiff Claudia Birdyshaw has received good performance evaluations and has never had any safety violations while on her prescribed medication for back pain while working for Defendant Dura Automotive.

31. On or about May 7, 2007, Dura Automotive implemented a drug free workplace program.

32. On May 10, 2007, Plaintiff Claudia Birdyshaw arrived at work and was required to submit to a drug test.

33. Plaintiff Claudia Birdyshaw reported to a common area where numerous other employees were waiting to be tested. Plaintiff Birdyshaw gave the requested urine sample.

34. Plaintiff Claudia Birdyshaw observed that the nurses did not change their gloves before receiving each sample.

35. Plaintiff Claudia Birdyshaw waited in the common area until the test was complete. The nurse who tested Plaintiff Claudia Birdyshaw's sample publicly announced in front of all employees in the area that Plaintiff Claudia Birdyshaw tested positive for the presence of certain chemicals in her urine sample.

36. Plaintiff Claudia Birdyshaw was directed to sit with a separate group of people identified as having tested positive and failed their drug tests. Human Resources director Lindsey Boots characterized this group as the "guilty section." The "guilty

-6-

section" was sent home from work and not paid for the remainder of the day.

37. On or about May 18, 2007, Plaintiff Claudia Birdyshaw was requested to come back to Dura Automotive and bring her prescriptions to the nurses who administered the initial tests.

38. The nurse for Dura Automotive met with Plaintiff Claudia Birdyshaw and advised Ms. Birdyshaw that she was addicted to those prescription drugs and the nurse for Defendant Dura Automotive instructed Plaintiff Claudia Birdyshaw to stop taking those medications.

39. Plaintiff Claudia Birdyshaw was not given an opportunity to speak with a medical review officer to discuss her prescription medications as required by the drug free workplace program.

40. On or about June 13, 2007, Plaintiff Claudia Birdyshaw consulted with her physician who advised her to continue taking her prescription medications.

41. On May or about 10, 2007, Plaintiff Claudia Birdyshaw was terminated from her position at Defendant Dura Automotive.

*Willarene Fisher*

42. Approximately 18 years ago, Plaintiff Willarene Fisher became employed with Defendant Dura Automotive working in the assembly of glass systems for installation on various motor vehicles.

43. Plaintiff Willarene Fisher worked at a station that required her to lift heavy glass pieces and place them on a conveyor belt.

44. Plaintiff Willarene Fisher's job duties included applying primer around the frames for

-7-

use in bus windows. Plaintiff Willarene Fisher used a special primer bottle to apply the primer, but had no contact with any tools or machinery that can be considered dangerous to any other person.

45. Plaintiff Willarene Fisher suffers from carpel tunnel syndrome caused in full or in part by the repeated stress of lifting heavy pieces of glass while working in the assembly process at Defendant Dura Automotive

46. Plaintiff Willarene Fisher is on several medications for the pain associated with her carpel tunnel syndrome prescribed under the supervision of her doctor. Plaintiff Willarene Fisher is also on prescription medications for high blood pressure, blood clots, and breathing problems associated with asthma.

47. Plaintiff Willarene Fisher has received good performance evaluations and has never had any safety violations while on her prescribed medication for carpel tunnel syndrome while working for Defendant Dura Automotive.

48. On August 30, 2006, Plaintiff Willarene Fisher underwent surgery on her right hand to treat her carpel tunnel syndrome.

49. On September 5, 2006, Plaintiff Willarene Fisher returned to work at Defendant Dura Automotive where she was assigned to pick up trash around the plant.

50. On October 25, 2006, Plaintiff Willarene Fisher underwent surgery on her left hand to treat her carpel tunnel syndrome.

51. After the surgery, Defendant Dura Automotive informed Plaintiff Fisher that it could not accommodate her physical condition. As a result, Plaintiff Fisher received worker's compensation.

-8-

52. On December 26, 2006, Plaintiff Willarene Fisher's physician released her to return to work.

53. Upon her return to work, Plaintiff Willarene Fisher was informed by Defendant Dura Automotive that there was no available work for her to perform. Defendant Dura Automotive informed Plaintiff Willarene Fisher that she would be paid out of the settlement for the injury to her hands until work could be found at the plant for Plaintiff Fisher.

54. From December 2006 to February 2007, Plaintiff Willarene Fisher contacted Defendant Dura Automotive System's Human Resources Department numerous times to request work.

55. On or about February 1, Plaintiff Willarene Fisher returned to work.

56. Upon returning to work, Plaintiff Willarene Fisher developed a severe case of shingles and was unable to work for approximately four months.

57. On or about June 1, 2007, Plaintiff Willarene Fisher returned to work at Dura Automotive.

58. At the time she returned to work, Plaintiff Willarene Fisher was required to participate in a drug test.

59. Plaintiff Willarene Fisher provided the requested urine sample.

60. The nurse administering the test informed Plaintiff Willarene Fisher that she tested positive for several prescription medications.

61. Defendant Dura Automotive placed Plaintiff Willarene Fisher on unpaid leave for thirty (30) days.

-9-

62.    Plaintiff Willarene Fisher was not given the opportunity to speak with a Medical Review Officer to discuss her medications as required by the Drug Free Workplace Program.

63.    Shortly thereafter, Plaintiff Willarene Fisher received a letter from Defendant Dura Automotive telling her to report to work in 30 days for a second drug test. The letter also requested Plaintiff Fisher to discontinue the use of her medications in order to pass the second drug test.

64.    Against the advice of her physician, Plaintiff Willarene Fisher discontinued use of the medications prescribed to her.

65.    On July 14, 2007, Plaintiff Willarene Fisher participated in a second drug test which she passed.

66.    Upon returning to work, Plaintiff Willarene Fisher was placed at one of the positions in the windows division.

67.    Plaintiff Willarene Fisher's work was cut back to four days a week and eventually was cut back to three days a week because Defendant Dura Automotive alleged that there was insufficient work for her in that area.

68.    Plaintiff Willarene Fisher was then assigned to a work station where her job duties included applying primer to windows.

69.    Because of her asthma, Plaintiff Willarene Fisher suffered breathing difficulties. Defendant Dura Automotive was informed of these breathing difficulties.

70.    Plaintiff Willarene's physician advised her to take off from work for three weeks in order to recover from the exposure to the primer fumes.

71. On September 4, 2007, Plaintiff Willarene Fisher returned to work. Because there was allegedly no other available work, Defendant Dura Automotive assigned Plaintiff Willarene Fisher to continue applying primer.

72. On September 5, 2007, after one day of working with the fumes, Plaintiff Willarene Fisher was experiencing breathing difficulties. She called in sick.

73. On September 6, 2007, Plaintiff Willarene Fisher returned to work. Plaintiff Fisher was summoned to the Human Resources Department where she was informed that due to only working 270 hours for the year, she was terminated.

74. Plaintiff Willarene Fisher was not given a notice of separation for purposes of applying for unemployment.

### *Mark Long*

75. Approximately 17 years ago, Plaintiff Mark Long became employed with Defendant Dura Automotive working in the assembly of glass systems for installation on various motor vehicles.

76. Plaintiff Mark Long worked at a station that required him to transport carts of large sheets of glass used in manufacturing bus windows and scanning and making labels for the windows.

77. Plaintiff Mark Long's job duties included transporting carts of glass used in manufacturing bus windows and scanning and making labels for the windows. Plaintiff Mark Long used a scanner to scan the labels and a cart to move the large sheets of glass, but had no contact with any tools or machinery that can be considered dangerous to any other person.

-11-

78. Plaintiff Mark Long suffers from several injuries caused in full or in part by the repeated stress of lifting heavy pieces of glass while working in the assembly process at Defendant Dura Automotive. These include severe injuries to both his left and right shoulder, a broken wrist, and a severe back injury.

79. Plaintiff Mark Long is on several medications for back pain prescribed under the supervision of his doctor.

80. Plaintiff Mark Long has received good performance evaluations and has never had any safety violations while on his prescribed medication for back pain while working for Defendant Dura Automotive.

81. On or about May 7, 2007, Dura Automotive implemented a drug free workplace program.

82. On May 10, 2007, Plaintiff Mark Long arrived at work and was required to submit to a drug test.

83. Plaintiff Mark Long reported to a common area where numerous other employees were waiting to be tested. Plaintiff Long gave the requested urine sample.

84. Plaintiff Mark Long was informed that he tested positive for the presence of certain chemicals in his urine sample.

85. Defendant Dura Automotive placed Plaintiff Mark Long on an unpaid leave based on the results of the drug test.

86. On July 19, 2007, Plaintiff Mark Long submitted to a second drug test.

87. Plaintiff Mark Long was informed that he tested positive for the presence of certain chemicals in his urine sample in the second drug test.

-12-

88. Plaintiff Mark Long was not given an opportunity to speak with a medical review officer to discuss his prescription medications as required by the drug free workplace program.

89. Defendant Dura Automotive placed Plaintiff Mark Long on a thirty (30) day unpaid leave based on the results of the second drug test.

90. On August 27, 2007, Defendant Dura Automotive laid-off Plaintiff Mark Long with no projected recall date.

91. As of this date, Defendant Dura Automotive has not recalled Plaintiff Mark Long.

### Jon Toungett

92. Approximately 23 years ago, Plaintiff Jon Toungett became employed with Defendant Dura Automotive working in the assembly of glass systems for installation on various motor vehicles.

93. Plaintiff Jon Toungett has approximately 18 years of perfect attendance at Defendant Dura Automotive.

94. For many years, Plaintiff Jon Toungett worked at a station that required him to drive a towmotor.

95. After Plaintiff Jon Toungett's position as a towmotor operator was eliminated, Plaintiff Toungett was reassigned to a different position where his job duties included applying clips to windows and packing the windows. Plaintiff Jon Toungett used a utility knife, suction cups, air locks, and a scanner to perform his duties, but had no contact with any tools or machinery that can be considered dangerous to any other person.

-13-

96.  Plaintiff Jon Toungett suffers from chronic back pain caused in full or in part by the constant jarring vibrations from operating the towmotor at Defendant Dura Automotive.

97.  On June 1, 2006, Plaintiff Jon Toungett underwent back surgery in an attempt to relieve his chronic back pain. He was off from work for four (4) months during his recovery.

98.  Plaintiff Jon Toungett is on medications for back pain and anxiety prescribed under the supervision of his doctor.

99.  Plaintiff Jon Toungett received good performance evaluations. He had one safety violation while working for Defendant Dura Automotive for 18 years.

100. On or about May 7, 2007, Dura Automotive implemented a drug free workplace program.

101. On May 10, 2007, Plaintiff Jon Toungett arrived at work and was required to submit to a drug test.

102. Plaintiff Jon Toungett reported to a common area where numerous other employees were waiting to be tested.  Plaintiff Toungett gave the requested urine sample.

103. The nurse who tested Plaintiff Jon Toungett 's sample informed him that he passed the drug test.

104. On August 20, 2007, Plaintiff Jon Toungett required an emergency trip to the emergency room in Nashville, Tennessee due to severe back pain he was experienced.

105. Plaintiff Jon Toungett was prescribed medication by his physician to alleviate the intense pain.

-14-

106. Plaintiff Jon Toungett returned to work the following day.

107. On August 23, 2007, Plaintiff Jon Toungett arrived at work and was required to submit to a drug test.

108. Plaintiff Jon Toungett reported to the nurse to be tested. Plaintiff Jon Toungett gave the requested urine sample.

109. The nurse informed Plaintiff Jon Toungett that he tested positive for prescription medications.

110. On August 30, 2007, Plaintiff Jon Toungett was terminated from his position at Defendant Dura Automotive.

111. Plaintiff Jon Toungett was not able to speak with a Medical Review Officer to discuss his medication as required by the Drug Free Workplace Program.

### Carolyn Wade

112. Approximately 12 years ago, Plaintiff Carolyn Wade became employed with Defendant Dura Automotive working in the assembly of glass systems for installation on buses and other motor vehicles.

113. Plaintiff Carolyn Wade's job duties included trimming and packing windows for use in bus windows. Plaintiff Carolyn Wade used scissors to cut the rubber gasket material, but had no contact with any tools or machinery that can be considered dangerous to any other person.

114. Plaintiff Carolyn Wade suffers from diabetes.

115. Plaintiff Carolyn Wade is on medication to control her diabetes, including weight loss medication, prescribed under the supervision of her doctor.

-15-

116. Plaintiff Carolyn Wade has received good performance evaluations and has never had any safety violations while on her prescribed medication for back pain while working for Defendant Dura Automotive.

117. On or about May 7, 2007, Defendant Dura Automotive implemented a drug free workplace program.

118. On May 10, 2007, Plaintiff Carolyn Wade arrived at work and was required to submit to a drug test.

119. Plaintiff Carolyn Wade reported to a common area where numerous other employees were waiting to be tested. Plaintiff Carolyn Wade gave the requested urine sample.

120. Plaintiff Carolyn Wade observed that the nurses did not change their gloves before receiving each sample.

121. Plaintiff Carolyn Wade received a letter stating she tested positive for prescription medication in her urine sample.

122. Plaintiff Carolyn Wade was directed by Defendant Dura Automotive to discontinue taking her prescription medications and return to work.

123. Plaintiff Carolyn Wade was not given an opportunity to speak with a medical review officer to discuss her prescription medications as required by the drug free workplace program.

124. Plaintiff Carolyn Wade consulted with her physician who advised her to continue taking her prescription medications. Plaintiff Carolyn Wade's physician provided a letter stating the medications she takes do not interfere with her work and do not place any of her co-workers in jeopardy.

-16-

125.    Plaintiff Carolyn Wade filed for unemployment compensation. Plaintiff Carolyn Wade was granted unemployment compensation. Defendant Dura Automotive disputed Plaintiff Carolyn Wade's claim for unemployment compensation. Plaintiff Carolyn Wade was laid off on July 21, 2008.

### *Richard White*

126.    Approximately 23 years ago, Plaintiff Richard White became employed with Defendant Dura Automotive working in the assembly of glass systems for installation on buses and other motor vehicles.

127.    For over 21 years, Plaintiff Richard White worked at a station that required him to lift heavy glass pieces used in bus windows.

128.    Plaintiff Richard White's job duties included testing the windows for water leaks. Plaintiff Richard White used a handjack to move pallets when the towmotor operators were not available. Plaintiff Richard White used a machine to spray water on the windows to test for leaks, but had no contact with any tools or machinery that can be considered dangerous to any other person.

129.    Plaintiff Richard White suffers from chronic back pain caused in full or in part by the repeated stress of lifting heavy pieces of glass while working in the assembly process at Defendant Dura Automotive.

130.    Plaintiff Richard White's back pain began 10 years ago when he injured his back while at work at Defendant Dura Automotive. After Plaintiff Richard White reported the injury to the safety director, Defendant Dura Automotive failed to make Plaintiff Richard White's personal insurance to pay for treatment of the injury.

-17-

131.   Plaintiff Richard White is on several medications for back pain prescribed under the supervision of his doctor. He takes medication for insomnia and anxiety prescribed under the supervision of his doctor.

132.   Plaintiff Richard White has received good performance evaluations and has never had any safety violations while on his prescribed medication for back pain while working for Defendant Dura Automotive.

133.   On or about May 7, 2007, Defendant Dura Automotive implemented a drug free workplace program.

134.   On May 7, 2007, Plaintiff Richard White arrived at work and was required to submit to a drug test.

135.   Plaintiff Richard White reported to a common area where numerous other employees were waiting to be tested. Plaintiff Richard White gave the requested urine sample.

136.   The nurse who tested Plaintiff Richard White's sample publicly informed Plaintiff White that he tested positive for the presence of certain chemicals in his urine sample.

137.   The nurse told Plaintiff Richard White that he must cease taking his doctor prescribed medications.

138.   Defendant Dura Automotive placed Plaintiff Richard White on a thirty day leave of absence.

139.   Plaintiff Richard White was directed by Defendant Dura Automotive to submit to a second drug test on May 17, 2007 at the Freedom from Self Clinic.

140.   On May 17, 2007, Plaintiff Richard White reported to the Freedom from Self Clinic for the second drug test.

-18-

141. The second drug test was positive for prescription medications.

142. On May 21, 2007, Richard White received a letter from Defendant Dura Automotive terminating his employment. They letter stated that it is a violation of company policy to use legal prescription drugs in prescribed amounts if the employee operates a vehicle or other machinery.

143. On June 18, 2007, Plaintiff Richard White's personal physician, Dr. Robert Cochran, sent a letter to Defendant Dura Automotive stating that Plaintiff White needed to stay on his prescribed medications and that the medications would not interfere with Plaintiff White's ability to perform his job functions.

144. On June 26, 2007, Plaintiff Richard White was terminated from his position at Defendant Dura Automotive.

145. Plaintiff Richard White was not able to speak with a Medical Review Officer to discuss his medication as required by the Drug Free Work Program.

## CLAIM I - AGE DISCRIMINATION

146. The allegations contained in Paragraphs 1-145 are realleged and incorporated by this reference as if set forth herein.

147. Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, Jon Toungett, Carolyn Wade, and Richard White are each over 40 years old and are a member of a protected class of persons over 40 years old.

148. Defendant Dura Automotive terminated the employment of Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, Jon Toungett, Carolyn Wade, and Richard White

-19-

149.	At all times relevant hereto, Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, Jon Toungett, Carolyn Wade, and Richard White were qualified for their former positions.

150.	Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, Jon Toungett, Carolyn Wade, and Richard White were treated adversely, as compared to other employees under 40 years old. Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, Jon Toungett, Carolyn Wade, and Richard White were terminated by Defendant Dura Automotive without just cause. Defendant Dura Automotive hired employees under 40 years of age to fill the job positions made empty as a result of the termination of Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, Jon Toungett, Carolyn Wade, and Richard White.

151.	Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, Jon Toungett, Carolyn Wade, and Richard White were discharged by Defendant Dura Automotive on the basis of their age, in violation of Title VII in the Age Discrimination Employment Act of 1967.

152.	Any basis for the terminations of Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, Jon Toungett, Carolyn Wade, and Richard White alleged by Defendant Dura Automotive is pretextual and in violation of federal and state law.

153.	This unlawful discharge has caused Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, Jon Toungett, Carolyn Wade, and Richard White to lose pay and other benefits of their employment, which have harmed Plaintiffs. Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, Jon Toungett, Carolyn Wade, and

-20-

Richard White seek compensatory and punitive damages, equitable relief, prejudgment interest and attorney fees and costs.

## CLAIM II - VIOLATION OF THE TENNESSEE HUMAN RIGHT ACT

154.    The allegations contained in Paragraphs 1-153 are realleged and incorporated by this reference as if set forth herein.

155.    Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, Jon Toungett, Carolyn Wade, and Richard White are each over 40 years old and are members of a protected class of persons over 40 years old.

156.    Defendant Dura Automotive terminated the employment of Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, Jon Toungett, Carolyn Wade, and Richard White.

157.    At all times relevant hereto, Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, Jon Toungett, Carolyn Wade, and Richard White were qualified for their former positions.

158.    Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, Jon Toungett, Carolyn Wade, and Richard White were treated adversely, as compared to other employees under 40 years old. Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, Jon Toungett, Carolyn Wade, and Richard White were terminated by Defendant Dura Automotive without just cause. Defendant Dura Automotive hired employees under 40 years of age to fill the job positions made empty as a result of the termination of Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, Jon Toungett, Carolyn Wade, and Richard White.

-21-

159. Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, Jon Toungett, Carolyn Wade, and Richard White were discharged by Defendant Dura Automotive on the basis of their age, in violation of the Tennessee Human Rights Act, T.C.A. § 4-21-101 *et seq.*

160. Any basis for the termination of Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, Jon Toungett, Carolyn Wade, and Richard White alleged by Defendant Dura Automotive is pretextual and in violation of state law.

161. This unlawful discharge has caused Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, Jon Toungett, Carolyn Wade, and Richard White to lose pay and other benefits of their employment, which has harmed Plaintiffs. Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, Jon Toungett, Carolyn Wade, and Richard White seek compensatory and punitive damages, equitable relief, prejudgment interest and attorney fees and costs.

## CLAIM III - BREACH OF CONTRACTUAL OBLIGATIONS

162. The allegations contained in Paragraphs 1-161 are realleged and incorporated by this reference as if set forth herein.

163. Defendant Dura Automotive breached its contractual duties to Plaintiffs by terminating their employment in violation of Defendant Dura Automotive's own employment policies.

164. Plaintiffs are damaged by Defendant Dura Automotive breach of contract. Plaintiffs seek actual and consequential compensatory damages and such other relief as may be just and proper.

-22-

## COUNT IV - PUBLIC DISCLOSURE OF PRIVATE FACTS

165.    The allegations in paragraph 1 - 164 are realleged and incorporated by this reference as if set forth herein.

166.    Defendant Dura Automotive, through its agent, publicly announced that Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, and Jon Toungett tested positive for the presence of certain chemicals in their urine samples.

167.    Information regarding the medications Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, and Jon Toungett were taking pursuant to their doctor's orders is private information and is not of public record.

168.    A reasonable person would object to having information regarding his or her drug test results publicly announced in a room full of co-workers.

169.    Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, and Jon Toungett have suffered and continue to suffer harm to their reputations among their co-workers and the community at large as a result of the public disclosure of their private information by Defendant Dura Automotive.

170.    Defendant Dura Automotive is further liable to Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, and Jon Toungett for all incidental, consequential, and punitive damages due to Defendant Dura Automotive's actions.

## COUNT V - FALSE LIGHT

171.    The allegations in paragraph 1 - 170 are realleged and incorporated by this reference as if set forth herein.

-23-

172. Defendant Dura Automotive publicly disclosed that Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, and Jon Toungett tested positive for the presence of drugs in their urine samples.

173. The test being conducted by Defendant Dura Automotive was for the purpose of identifying individuals taking prohibited legal and illegal drugs and therefore the public disclosure made by Defendant Dura Automotive had the effect of portraying Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, and Jon Toungett as a users of prohibited drugs.

174. In reality, Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, and Jon Toungett were taking legal prescription medications under the supervision of a doctor for injuries resulting from their long term strenuous work at Defendant Dura Automotive and other medical conditions.

175. A reasonable person would find it objectionable to be labeled as a user of prohibited drugs and as "guilty" of using drugs.

176. Defendant Dura Automotive placed Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, and Jon Toungett in a false light which is highly offensive to a reasonable person.

177. Plaintiffs Velma Sue Bates, Claudia Birdyshaw, Willarene Fisher, and Jon Toungett have suffered and continue to suffer harm to their reputation among their co-workers and the community at large as a result of the public disclosure of their private information by Defendant Dura Automotive.

178. Defendant Dura Automotive is further liable to Plaintiffs Velma Sue Bates, Claudia

-24-

Birdyshaw, Willarene Fisher, and Jon Toungett for all incidental, consequential, and punitive damages due to Defendant Dura Automotive's actions.

## COUNT VI - VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

179.    The allegations in paragraph 1 - 178 are realleged and incorporated by this reference as if set forth herein.

180.    Plaintiffs each have a disability that impairs one or more major life activities, have a record of such impairments, and/or Defendant Dura Automotive perceived Plaintiffs to have such impairments.

181.    Plaintiffs were qualified to work for Defendant Dura Automotive in their respective positions.

182.    Defendant Dura Automotive laid off and/or terminated Plaintiffs' employment on the basis of their disabilities.

183.    Defendant Dura Automotive discriminated against the Plaintiffs in that Defendant Dura Automotive laid off and/or terminated Plaintiffs' employment on the basis of their disabilities and/or perceived disabilities in violation of the ADA.

184.    This unlawful discharge has caused Plaintiffs to lose pay and other benefits of their employment, which has harmed Plaintiffs. Plaintiffs seek compensatory and punitive damages, equitable relief, prejudgment interest and attorney fees and costs.

## COUNT VII - VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

185.    The allegations in paragraph 1 - 184 are realleged and incorporated by this reference as if set forth herein.

186.    Plaintiffs have a disability that impairs one or more major life activities, have a record

of such impairments, and/or Defendant Dura Automotive perceived Plaintiffs to have such impairments.

187.    Plaintiffs were qualified to work for Defendant Dura Automotive in positions other than the ones to which they were assigned.

188.    Defendant Dura Automotive selected less qualified employees and/or applicants outside the protected class to fill positions with Defendant Dura Automotive.

189.    Defendant Dura Automotive discriminated against the Plaintiffs in that Defendant Dura Automotive failed or refused to reassign the Plaintiffs to other positions on the basis of their disability and/or perceived disabilities in violation of the ADA.

190.    This unlawful discharge has caused Plaintiffs to lose pay and other benefits of their employment, which has harmed Plaintiffs. Plaintiffs seek compensatory and punitive damages, equitable relief, prejudgment interest and attorney fees and costs.

## COUNT VIII - VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

191.    The allegations in paragraph 1 - 190 are realleged and incorporated by this reference as if set forth herein.

192.    Plaintiffs have a disability that impairs one or more major life activities, have a record of such impairments, and/or Defendant Dura Automotive perceived Plaintiffs to have such impairments.

193.    Plaintiff were qualified to work for Defendant in positions other than the ones to which they were assigned. Plaintiffs did not pose a direct threat to themselves or others, nor did they show an inability to perform their essential job functions.

194.    Defendant required each of the Plaintiffs to participate in a drug test to determine

-26-

whether the Plaintiffs were taking legally prescribed medications to treat a disability or other impairment of the Plaintiffs.

195.     Defendant Dura Automotive laid-off and/or terminated Plaintiffs' employment on the basis of their disabilities and/or perceived disabilities as identified by the mandatory drug test. Defendant Dura Automotive does not have a legitimate non-discriminatory reason which is either job-related or consistent with business necessity for requiring the Plaintiffs to participate in the drug test and for laying-off and/or terminating Plaintiffs.

196.     Defendant Dura Automotive discriminated against Plaintiffs in that Defendant Dura Automotive laid-off and/or terminated Plaintiffs' employment on the basis of their disabilities and/or perceived disabilities as identified by the mandatory drug test in violation of the ADA.

197.     This unlawful medical examination and discharge has caused Plaintiffs to lose pay and other benefits of their employment, which has harmed Plaintiffs. Plaintiffs seek compensatory and punitive damages, equitable relief, prejudgment interest and attorney fees and costs.

## COUNT IX - VIOLATIONS OF T.C.A. § 8-50-103

198.     The allegations in paragraph 1 - 197 are realleged and incorporated by this reference as if set forth herein.

199.     Plaintiffs each have a disability that impairs one or more major life activities, have a record of such impairments, and/or Defendant Dura Automotive perceived Plaintiffs to have such impairments.

-27-

200.	Plaintiffs were qualified to work for Defendant Dura Automotive in their respective positions.

201.	Defendant Dura Automotive laid off and/or terminated Plaintiffs' employment on the basis of their disabilities.

202.	Defendant Dura Automotive  discriminated against the Plaintiffs in that Defendant Dura Automotive laid off and/or terminated Plaintiffs' employment on the basis of their disabilities and/or perceived disabilities in violation of T.C.A. § 8-50-103.

203.	This unlawful discharge has caused Plaintiffs to lose pay and other benefits of their employment, which has harmed Plaintiffs.  Plaintiffs seek compensatory and punitive damages, equitable relief, prejudgment interest and attorney fees and costs.

WHEREFORE, Plaintiffs prays this Honorable Court to:

A.	Empanel a jury to hear this cause of action.

B.	Enter a declaratory judgment that the practices complained of herein are unlawful and in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. 621 *et seq.*;

C.	Enter a declaratory judgment that the practices complained of herein are unlawful and in violation of the Tennessee Human Rights Act, T.C.A. § 4-21-101 *et seq.*;

D.	Enter a declaratory judgment that the practices complained of herein are unlawful and constitute a retaliatory discharge of Plaintiffs by Defendant Dura Automotive pursuant to Tennessee state law;

E.	Enter a declaratory judgment that the practices complained of herein by Defendant Dura Automotive breached its contractual obligations to Plaintiffs;

-28-

F.   Enter a declaratory judgment that the practices complained of herein are unlawful and in violation of the Americans with Disabilities Act;

G.   Enter a declaratory judgment that the practices complained of herein are unlawful and in violation of T.C.A. § 8-50-103;

H.   Permanently enjoin Defendant Dura Automotive, its agents, successors, officers, employees, attorneys, and those acting in concert with it or them from engaging in each of the unlawful practices, policies, customs, and usages set forth herein, and from continuing any and all other practices to be in violation of applicable law;

I.   Order modification or elimination of practices, policies, customs, and usage set forth herein and all other such practices shown to be in violation of applicable law so that they do not discriminate on the basis of age;

J.   Compensate and make whole Plaintiffs for all earnings, wages, and other benefits each Plaintiff would have received but for the discriminatory practices of the Defendant Dura Automotive;

K.   Award Plaintiffs reasonable front-pay and back-pay and compensation.  Plaintiffs also requests compensatory and punitive damages, and prejudgment interest;

L.   Grant Plaintiffs a trial by jury and a monetary judgment.  Plaintiffs also seeks reinstatement with back pay;

M.   Award Plaintiffs the costs and disbursements of this action, including reasonable attorney's fees in accordance with applicable law, prejudgment interest,  court costs, and discretionary costs;

L.   Grant such other relief as may be just and proper.

-29-

Respectfully submitted,

/s/ Matt Sharp
John A. Beam, III #11796
Kristin Fecteau, #19772
Matt Sharp, #25682
*Equitus Law Alliance, PLLC*
709 Taylor Street
Post Office Box 280240
Nashville, Tennessee 37228
Telephone:    615/251-3131
Facsimile:    615/252-6404

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the Amended Complaint with the Clerk of this Court using the CM/ECF system which will automatically send email notification of such filing to the following parties who are CM/ECF participants:

Robert E. Boston
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2100
Nashville, Tennessee 37219-1760

Gary W. Klotz
Stanley, Craig M.
150 West Jefferson, Suite 150
Detroit, Michigan 48226

Ben Boston
BOSTON, HOLT, SOCKWELL & DURHAM, PLLC
235 Waterloo Street
P.O. Box 357
Lawrenceburg, TN 38464

this the 30th day of September, 2008.

/s/ Matt Sharp

-30-

Matt Sharp