UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| VELMA SUE BATES, CLAUDIA BIRDYSHAW, WILLARENE FISHER, MARK LONG, JON TOUNGETT, CAROLYN WADE, and RICHARD WHITE,<br><br>    Plaintiffs,<br><br>v.<br><br>DURA AUTOMOTIVE SYSTEMS, INC.,<br><br>    Defendant. | Case No. 1:08-0029<br>Judge Trauger |

## MEMORANDUM

Pending before the court in this employment discrimination case is the defendant Dura Automotive Systems, Inc's ("Dura's") Motion for Clarification by the Court of Two Issues in Its Memorandum Opinion on the Cross Motions for Summary Judgment, or, in the Alternative, Certification of an Interlocutory Appeal (Docket No. 81), to which the plaintiffs have responded (Docket No. 83). For the reasons discussed herein, this motion will be granted in part, that is, the court will grant certification of an interlocutory appeal as to one issue and otherwise stay proceedings pending the outcome of any appeal.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs are seven former Dura employees who all worked at Dura's Lawrenceburg, Tennessee manufacturing facility, and who claim that Dura's facility-wide drug testing policy violated their rights under the Americans with Disabilities Act ("ADA"). (Docket No. 77.) On April 23, 2009, this court issued a Memorandum and Order, granting in part and denying in part

1

Dura's Motion for Summary Judgment. Finding that none of the plaintiffs had a present disability, the court dismissed most of the plaintiffs' ADA and state law claims. However, the court further held that "[t]he plaintiffs may move forward with their claims under Section 12112(b)(6) of the ADA, and plaintiff Fisher may move forward with her disability discrimination claim under the ADA and Tennessee Disability Act based on the 'record of' disability theory." (Docket No. 78.) No timely motions for reconsideration of that Memorandum and Order were filed.

Rather, almost three months after that Memorandum and Order was issued, Dura filed the pending "Motion to Clarify," which "requests that the Court clarify two narrow and distinct substantive issues" from the court's Memorandum and Order, in preparation for the September 1, 2009 trial. (Docket No. 81 at 1.) The first issue is "whether under the ADA plaintiffs must be individuals with disabilities to have standing to challenge an employer's job qualification standard" under Section 12112(b)(6) of the ADA. (*Id.* at 2.) The second issue is "whether plaintiff Fisher can under current law proceed on a 'record of' disability claim when, as the court found, she does not have an actual disability." (*Id.*)

## ANALYSIS

While Dura labels its motion as a "Motion to Clarify," it is, in fact, an untimely "Motion for Reconsideration." A review of the defendant's briefing plainly shows that, while the defendant claims it only seeks clarification, through clarification, it is requesting that the court reverse its previous position and find that, in light of the court's conclusion that the plaintiffs are not presently disabled, the plaintiffs may not maintain an action under Section 12112(b)(6) of the ADA and plaintiff Fisher may not maintain a "record of disability" claim. (*See generally* Docket

No. 82.) This point is further illuminated by the defendant's statement that "if the court declines to consider and clarify these two core issues, defendant requests that the court certify these issues for interlocutory appeal." (Docket No. 81 at 3.)

**I.      Standard of Review**

The Court of Appeals for the Sixth Circuit has observed that the "Federal Rules of Civil Procedure do not explicitly address motions for reconsideration of interlocutory orders" but has provided that "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). While district courts have "significant discretion" in deciding motions for reconsideration, "[t]raditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 Fed. Appx. at 959 (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)).

The court has repeatedly interpreted its Local Rules to require that a motion for reconsideration of a summary judgment decision be filed within twenty days of the court's ruling. *See Al-Sadoon v. FISI Madison Fin. Corp*, 188 F.Supp. 2d 899, 902 (M.D. Tenn. 2002); *Corso Enters., Inc. v. Shop-At-Home Network, Inc.*, 2005 WL 2346986, *3 (M.D. Tenn. Sept. 26, 2005) (citing Local Rule 8(b)(3))[1]. Here, properly considering this motion as a motion for

---

[1] Now Local Rule 7.01(b).

reconsideration, it is untimely.[2] That said, as these are important issues, and the court has the inherent power to modify interlocutory orders prior to the entry of a final judgment, the court will address the arguments raised in the "Motion to Clarify." *See Mallory*, 922 F.2d at 1282.

**I.    Standing**

In its Memorandum, the court found that the plaintiffs had a viable claim for trial under Section 12112(b)(6) of the ADA, even though they are not, as a matter of law, presently disabled. Section 12112(b)(6) states that improper ADA disability discrimination includes "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity." 42 U.S.C. § 12112(b)(6).

The court concluded that, because the drug testing program at issue "screen[s] out individuals who, by nature of their prescription drug use, have certain chemicals in their system that are designed to treat serious physical and mental problems, Dura's test clearly 'tends to screen out' individuals with disabilities." (Docket No. 77 at 24.) Moreover, because the drug testing program "automatically excludes all employees who take certain medications from working in any capacity at Dura, without any regard for individualized circumstances," a reasonable juror could find that the program was not "job-related for the position in question" and was not "consistent with business necessity." (Docket No. 77 at 27.) On these grounds, the

---

[2] Although inconvenient and, no doubt, disturbing to the plaintiffs, it is understandable that the intensity of trial preparation has brought to the forefront certain issues that were not focused upon by counsel immediately upon receiving the court's summary judgment ruling.

4

court concluded that the plaintiffs – who had all been subject to and, at least on some level, adversely affected by, Dura's drug testing program – had a viable claim under Section 12112(b)(6).

Here, the defendant argues that, under its previous holding in *EEOC v. Murray*, 175 F. Supp.2d 1053 (M.D. Tenn. 2001), the court was obligated to conclude that the non-disabled plaintiffs do not have standing to maintain a Section 12112(b)(6) claim. (Docket No. 82 at 2.) There is language in *Murray* that supports the defendant's position. For instance, the opinion reads, "an individual who is not disabled under the ADA cannot seek the protections of the statute." *Murray*, 175 F. Supp. 2d at 1058. Additionally, in *Murray*, the court concluded that, because the employee at issue did not claim to be disabled, an individual claim under Section 12112(b)(6) could not be pursued, although the EEOC could pursue a claim under that provision as part of a pattern-or-practice claim. *Id.* at 1059-1062.

While the defendant's brief would make it appear that the court relied on and misapplied *Murray* throughout its opinion, the court only referred to *Murray*'s Section 12112(b)(6) analysis, among other cases, in a single footnote. (Docket No. 77 at 23.) While *Murray* provided the appropriate provision of the ADA to guide the analysis (Section 12112(b)(6) instead of Section 12112(d)(4)(A)), *Murray* was not particularly helpful in application, because it arose in a different context, and more recent case law provides a better factual parallel.[3] For instance, in

---

[3] In the plaintiffs' response, they argue that they are entitled to proceed under Section 12112(d)(4)(A), as well as under Section 12112(b)(6), because, in addition to plant-wide screening, Dura's drug testing program featured individual meetings with those who failed the initial panel test to discuss which drugs the individuals were taking. (Docket No. 83 at 6.) Section 12112(d)(4)(A) states that "a covered entity shall not require a medical examination and shall not make inquiries of an employee *as to whether such employee is an individual with a disability or as to the nature or severity of the disability*, unless such examination or inquiry is

5

*Murray*, the court did not have to make the difficult decision as to whether a company that allegedly engaged in impermissible medical screening under Section 12112(b)(6) should be free from liability or responsibility simply because the plaintiff had not sufficiently established disability, because, in that case, the EEOC existed as a fallback to pursue rights protected by the ADA through the pattern-and-practice claim. *Murray*, 175 F. Supp.2d at 1062.

Further, at the time of the court's Memorandum in this case, more than seven years had passed since *Murray*, and the court had the benefit of *Wice v. GM*, 2008 WL 5235996, *2 (E.D. Mich. Dec. 15, 2008), which is a case more squarely on point. There, the court found, citing both Section 12112(b)(6) and Section 12112(d)(4)(A), that a non-disabled individual plaintiff could maintain an individual claim under the ADA for "disability" discrimination arising out of an employer's medical screening if that screening was not "job-related" and not "consistent with business necessity."[4] *Id.* at *1-2. The court also had the benefit of the recent amendments to the ADA, which, while not directly applicable to this case because this case arose before those amendments were enacted, were motivated by Congress's view that courts had generally been too strict in their interpretation of terms such as "disability" and too narrow in their

---

shown to be job-related and consistent with business necessity." (emphasis added). Despite the plaintiffs' arguments, this case is best evaluated using the rubric of Section 12112(b)(6). As discussed in the Memorandum, Dura's policy was that "any employee, regardless of age, or health status, taking drugs for any reason that carried warnings about the operation of equipment or machinery or impaired mental alertness were not allowed to work at Dura until he/she discontinued use of the prohibited drug." (Docket No. 77 at 5.) That is, Dura was not "making inquiries" beyond what drugs an employee was taking, and, therefore, the facts of this case do not fit well within the language of Section 12112(d)(4)(A).

[4] As to the Section 12112(d)(4)(A) claim, unlike here, *Wice* involved a full-fledged medical examination of the plaintiff, in which "inquiries" into disabilities were a likely consequence. *Wice*, 2008 WL 5235996, at *1-2.

6

interpretations of the protections generally offered by the ADA. (See Docket No. 77 at 24.) Therefore, the court believes that its present interpretation of this provision of the ADA, as stated in its Memorandum, is correct, and the court will not "clarify" that opinion to benefit the defendant.

### A. Interlocutory Appeal

As alternative relief to "clarification," the defendant seeks an interlocutory appeal under 28 U.S.C. § 1292(b) on the issue of whether the plaintiffs must be disabled under the ADA to seek relief under Section 12112(b)(6).[5] Interlocutory appeals may be granted when there is substantial ground for differing opinions regarding a controlling issue of law and when an immediate appeal from the order would materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Interlocutory appeals are an exception to the general policy against piecemeal appellate review embodied in the final judgment rule. *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 29 F. Supp. 2d 825, 832 (S.D. Ohio. 1998). Therefore, certification under Section 1292(b) is to be "sparingly" applied. *Vitols v. Citizens Banking Co.*, 984 F.2d 168, 170 (6th Cir. 1993). That is, avoiding piecemeal litigation is preferable except in the "exceptional" type of case contemplated by Section 1292(b). *Id.*

Section 1292(b) applies to interlocutory orders that are not otherwise appealable and requires the existence of three elements: (1) the issue must involve a controlling question of law;

---

[5] Section 1292(b) states: "[w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order."

7

(2) there must be a substantial ground for difference of opinion about the issue, and (3) an immediate appeal must materially advance the ultimate termination of the litigation. *In re City of Memphis*, 293 F.3d 345, 350. An "interlocutory appeal is favored where reversal would substantially alter the course of the district court proceedings or relieve the parties of significant burdens." *Gaylord Ent'mt Co. v. Gilmore Entn't Group*, 187 F. Supp. 2d 926, 957 (M.D. Tenn. 2001). While permitting an interlocutory appeal is a matter of discretion and is favored "early in the proceedings," it is not precluded at other times in the course of "protracted and expensive" litigation, where resolution of a key issue could save the parties considerable time and expense. *See id.*

After reviewing the arguments submitted, the defendant is correct that this issue qualifies for interlocutory review under the standard discussed above. First, the issue involves a controlling question of law, that is, one that "could materially affect the outcome of the case." *City of Memphis*, 293 F.3d at 351. Clearly, whether the plaintiffs must be disabled to have standing to pursue their individual claims is a controlling question of law. If the plaintiffs must be disabled to pursue a Section 12112(b)(6) claim, then the Section 12112(b)(6) claims of all of the plaintiffs, except Fisher, would fail. If no showing of disability is required, then all seven plaintiffs – all of whom were subject to and adversely affected by the testing at issue here – could proceed to trial on the Section 12112(b)(6) claims.[6]

---

[6]Fisher's claims would also be affected by the interlocutory appeal. If the Sixth Circuit reversed the court on the Section 12112(b)(6) issue, then Fisher would, presumably, have to establish disability at trial before the jury could consider her Section 12112(b)(6) claim. But, if the Sixth Circuit affirmed the court's Order on the Section 12112(b)(6) issue, then Fisher, like the other plaintiffs, would not have to establish disability before the jury could consider the Section 12112(b)(6) claim.

Second, there is a substantial ground for difference of opinion on this issue. A substantial ground for difference of opinion may exist where the Sixth Circuit "has not rendered a decision on the matter," and the relevant authorities are "susceptible to competing interpretations." *West Tenn. Chapter of Assoc. Builders and Contractors, Inc. v. City of Memphis*, 138 F. Supp. 2d 1015, 1026 (W.D. Tenn. 2000). As noted in the Memorandum, there appears to be no controlling Sixth Circuit precedent on this issue, and "numerous courts ... have concluded that a party need not be disabled to assert claims under" Section 12112(b)(6) and similar provisions, while "certain courts have held that being disabled is a prerequisite to asserting any claims under the ADA." (Docket No. 77 at 23-24, collecting cases).

As discussed in the Memorandum, based on the purpose of the provision, the most logical interpretation of Section 12112(b)(6) seems to be that it protects all employees, disabled or not, from invasive qualification tests that are not consistent with business necessity. That is, "the language of th[is] provision[] broadly protects all employees from intrusive and unfocused workplace medical testing." (Docket No. 77 at 24.) Indeed, under this provision, the crucial issue appears to be the scope of the testing – not the actual status of the employee tested. However, also as discussed in the Memorandum and in the defendant's briefing here, not all courts have reached this conclusion, relying on a string of cases that require a showing of "disability" before an individual may pursue any claim under the ADA. *Id.* Plainly, there is a substantial ground for difference of opinion here.

Finally, an immediate appeal would materially advance the ultimate termination of the litigation. An interlocutory appeal materially advances the ultimate termination of the litigation when it "save[s] judicial resources and litigant expense." *West Tenn. Chapter of Assoc. Builders*,

9

138 F. Supp. 2d at 1026. Here, while a substantial amount of time and energy has already gone into this case, the parties still face pre-trial motion practice, a lengthy, complicated and undoubtedly expensive trial, and, presumably, post-trial briefing, all on complex and somewhat unsettled issues.[7] Much of these costs would be avoided if the Sixth Circuit rules for the defendant, and, as noted above, "interlocutory appeal is favored where reversal would substantially alter the course of the district court proceedings or relieve the parties of significant burdens." *Gaylord Ent'mt Co.*, 187 F. Supp. 2d at 957. That standard is satisfied here, and, therefore, the court will certify the issue of whether the plaintiffs must be disabled to pursue their claim under Section 12112(b)(6) of the ADA.[8]

## II.     Plaintiff Fisher

The defendant also seeks "clarification" of "whether plaintiff Fisher can have a 'record of' disability in the absence of an actual disability." (Docket No. 82 at 7.) The defendant contends that "it would seem impossible to have a record of what one never had" and "this

---

[7] Moreover, while interlocutory appeal is favored early in the proceedings and while this litigation has been proceeding for some time, the precise parameters of this case – largely as a Section 12112(b)(6) case asserted by plaintiffs who, for the most part, are not disabled under the ADA – only came into focus recently.

[8] The plaintiffs contend that the defendant's "petition" for appeal is untimely and that the court should not permit an interlocutory appeal on that ground. (Docket No. 83 at 4.) The provisions of the Federal Rules of Appellate Procedure that require that the party seeking to appeal provide a notice of appeal within a certain time period from the judgment do not appear to apply to a party's Section 1292(b) motion for certification in the district court. Indeed, courts have found motions for certification of an interlocutory appeal to be appropriate months after a judgment, although courts suggest that the party seeking certification should act with "diligence." *See Giddes v. Glen Falls Ins. Co.*, 2003 WL 23486911, *1 (M.D. Fla. Aug. 5, 2003); *McLaurin v. U.S.*, 2008 WL 782487, *1 (S.D. Miss. Mar. 24, 2008). As the defendant does not appear to have violated any rules with regard to the timing of its filing, the court will not reject the defendant's arguments on timing grounds.

10

finding that plaintiff Fisher has *or had* no actual disability appears necessary to foreclose any claim under the 'record of' approach." (*Id.*)(emphasis added). As discussed below, the defendant misreads the Memorandum, in which the court determined that plaintiff Fisher had raised a fact issue as to whether she *had* a disability in the past.

As discussed in the Memorandum, one may be "disabled" under the ADA if one has "(1) a physical or mental impairment that substantially limits one or more major life activities; [or] (2) a record of such an impairment [or] (3) [been] regarded as having such an impairment." 42 U.S.C. § 12102(1). The "record of" provision, "protects people who have recovered from previously disabling conditions ... but who remain vulnerable to the fears and stereotypes of their employers." *EEOC v. DaimlerChrysler Corp.*, 111 Fed. Appx 394, 404 (6th Cir. 2004) (internal quotation omitted). Therefore, one need not be presently disabled in order to have a claim under the ADA for disability discrimination under the "record of" prong. *Id.*

As the court stated in its Memorandum,

Dura's employment records reflect that plaintiff Fisher had shingles and was on medical leave from February 2007 to June 2007 that prevented her from working, *imposing a substantial limitation on the major life activity of working*. Further, Dura's records reflect that Fisher was terminated for not working enough hours in the prior year, a problem that was obviously related to the time she missed due to shingles. Indeed, these records, specifically Dura's notes from the termination meeting, demonstrate that Dura understood that Fisher had to "back out" from work in this February to June time period because of the shingles. Dura argues that Fisher was legitimately terminated, along with other employees, for lack of work, and it is undisputed that Fisher was laid off in conjunction with other Dura employees at a time when work was generally slow at the Facility. On this record, whether Fisher was impermissibly terminated due to her "record of" disability or for legitimate reasons is a question for the jury. (Docket No. 77 at 21-22.) (internal citation omitted)(emphasis added)

The defendant has failed to show that the court's initial conclusion as to plaintiff Fisher

was incorrect.  As stated in the Memorandum, the fact that plaintiff Fisher had, on file at Dura, a record of a prolonged and debilitating disease that prevented her from working raised a fact issue as to whether Fisher had a "record of" a disability.  *DaimlerChrysler Corp.*, 111 Fed. Appx at 404.  As should be clear from the Memorandum and from this opinion, the court was not concluding that Fisher's previous condition had rendered her disabled as a matter of law, only that there was a genuine issue of fact on that point.

While the defendant, without explanation or application of the standard, seeks an interlocutory appeal on this issue as well, this issue does not appear to qualify for interlocutory review under the standard addressed above.  Indeed, on this point, the relevant issue of law appears reasonably well settled, that is, a plaintiff need not be presently disabled in order to establish a "record of" a disability.  Further, while the defendant may argue that plaintiff Fisher had not brought forth enough facts to sufficiently raise a fact issue as to previous disability, such arguments, raised after summary judgment and before trial, are typical and do not indicate the type of "exceptional" circumstance for which interlocutory review is appropriate, under the standard discussed above.

That said, in the interests of judicial economy, Fisher's case (along with the rest of this matter) will be stayed pending the resolution of any interlocutory appeal.  "District courts enjoy considerable discretion in establishing the framework for the orderly progression of a case." *Speers v. County of Berrian*, 2005 WL 1907525, *3 (W.D. Mich Aug. 10, 2005).  Allowing one portion of a case to proceed to trial while another, substantial portion of a case is proceeding on interlocutory appeal invites "needless duplication, waste, and expense." *Id.*  Not only are "multiple trials ... more expensive than a single trial," but multiple trials could also invite

12

"duplicative and overlapping testimony on multiple occasions." *Id.* Additionally, here, as discussed in the note above, how plaintiff Fisher's case should proceed would be directly affected by any ruling from the Sixth Circuit on the Section 12112(b)(6) issue. Therefore, principles of "sound judicial administration" dictate that Fisher's case be stayed pending the resolution of any interlocutory appeal. *Id.*

## CONCLUSION

For the reasons discussed herein, the defendant's "Motion to Clarify" will be granted in part. While the court stands by its initial summary judgment ruling in this case, the issue of whether the plaintiffs must be disabled in order to have standing to pursue a claim under Section 12112(b)(6) is, under the circumstances, an appropriate one for interlocutory review, and, therefore, the court will certify that issue for such review. This matter will be stayed (and all pre-trial deadlines and the trial continued) pending any appeal and the resolution thereof.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

13