IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| VELMA SUE BATES, CLAUDIA ) <br> BIRDYSHAW, WILLARENE FISHER, ) <br> MARK LONG, JON TOUNGETT, ) <br> CAROLYN WADE, and RICHARD WHITE, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> DURA AUTOMOTIVE SYSTEMS, INC., ) <br> ) <br>     Defendant. ) | Case No. 1:08-cv-0029 <br> Judge Trauger |

## MEMORANDUM AND ORDER

Pending before the court is the Motion for Attorney Fees and Discretionary Costs filed by the plaintiffs (Docket No. 202), to which the defendant has filed a response (Docket No. 206). For the reasons discussed below, the court will defer judgment on the motion.

## BACKGROUND

The plaintiffs in this suit were formerly employed by the defendant, Dura Automotive Systems, Inc. ("Dura"), at its Lawrenceburg, Tennessee manufacturing facility. In 2007, Dura banned its employees from taking certain prescription medications, and it forced employees at the Lawrenceburg facility to undergo mandatory drug testing. Ultimately, six of the plaintiffs were terminated because of their use of legally prescribed medications. The other plaintiff, Willarene Fisher, was terminated after missing a substantial amount of work due to illness.

The plaintiffs filed this suit on May 9, 2008, initially asserting claims for: (1) age discrimination; (2) violation of the Tennessee Human Rights Act; (3) breach of contract; (4)

1

public disclosure of private facts; (5) false light; (6) violation of the Americans with Disabilities Act ("ADA"); and (7) violation of the Tennessee Disability Act. (*See* Docket No. 1; Docket No. 28.) On March 4, 2009, the plaintiffs voluntarily dismissed their age discrimination and Tennessee Human Rights Act claims. (Docket No. 57.)

At the summary judgment stage, the court dismissed the plaintiffs' privacy and contract claims. (Docket No. 77 at 28.) The court also narrowed the scope of the plaintiffs' ADA claims. (*Id.* at 18-28; Docket No. 78.) Specifically, the court found that, with the exception of plaintiff Willarene Fisher, the plaintiffs were not "disabled," as that term is used in the ADA. (Docket No. 77 at 18-23.) This precluded the plaintiffs, other than Fisher, from pursuing disability discrimination claims under the ADA. The defendant filed an interlocutory appeal of the court's summary judgment decision, and the Sixth Circuit's opinion clarified under which provision of the ADA the plaintiffs could sue. *See Bates v. Dura Auto. Sys., Inc.*, 625 F.3d 283 (6th Cir. 2010).

On July 12, 2011, the parties began a five-day trial of the plaintiffs' ADA claims. All of the plaintiffs pursued claims under 42 U.S.C. § 12112(d)(4), which prohibits employers from "requir[ing] a medical examination" or from "mak[ing] inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability," unless the examination or inquiry is "job-related and consistent with business necessity." In addition, plaintiff Willarene Fisher pursued a disability discrimination claim under 42 U.S.C. § 12112(a).

The jury returned a verdict on July 20, 2011 in favor of plaintiffs Velma Sue Bates,

2

Claudia Birdyshaw, Mark Long, John Toungett, Carolyn Wade, and Richard White. The jury found that Dura's drug testing was not "job-related and consistent with business necessity" and that each of those six plaintiffs had suffered damages as a result of the drug testing. (Docket No. 195 at 1.) The damages awarded to the plaintiffs ranged from a nominal $1 award to Richard White to a combined compensatory and punitive damages award of $394,488 to Carolyn Wade. The jury found in favor of Dura on plaintiff Willarene Fisher's claims, however, finding that Fisher suffered no damages as a result of the drug testing and that her disability discrimination claim failed because she did not have a record of disability. (*Id.* at 3, 7.)

Now, the plaintiffs have filed a Motion for Attorney Fees and Discretionary Costs, seeking to recover $148,793.50 in attorney's fees and $10,950.22 in costs from the defendant.

## **ANALYSIS**

The ADA provides that the court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. The defendant does not dispute that the plaintiffs are entitled to some amount of attorney's fees under this provision. (Docket No. 206 at 1.)

The parties agree that the amount of reasonable attorney's fees should be calculated using the lodestar method. Under this method, the court must first determine the lodestar amount by multiplying the reasonable number of hours billed by the plaintiffs' attorneys with a reasonable hourly rate. *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007); *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). The court can then adjust that amount up or down based on a

3

number of factors.[1]  Generally, the goal is to award a fee that is adequate to attract competent counsel without creating a windfall for lawyers.  *Reed*, 179 F.3d at 471.  The plaintiffs have the burden of documenting the amount of fees they are requesting.  *Gonter*, 510 F.3d at 617.

Here, the law firm that represents the plaintiffs, Equitus Law Alliance, PLLC, has submitted 26 pages of billing records containing billing entries for various tasks and the amount of fees billed for each task.  (*See* Docket No. 204, Ex. 1.)  In addition, the plaintiffs' lead attorney, John Beam III, has submitted an affidavit setting out the firm's hourly billing rates, which range from $225 per hour for his own work to $45 per hour for work by interns.  (Docket No. 205.)

The defendant does not contest the fact that these hourly rates are reasonable.  (Docket No. 206 at 1.)  Instead, it argues that the plaintiffs' attorneys have not sufficiently documented their billing.  Specifically, the defendant points out that the plaintiffs' billing records fail to indicate (1) how much time was billed for each task, and (2) which attorney worked on a given

---

[1] These factors, first enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), are:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Reed*, 179 F.3d at 471 n.3 (citing *Johnson*, 488 F.2d at 717-19).

4

task. (*Id.* at 3-4.) Instead, the records simply list the amount of fees billed for each task.

The court agrees that the billing records submitted by the plaintiffs are insufficient. This district's Local Rules require that parties support motions for attorney's fees with documentation "setting out in detail the *number of hours* spent on each aspect of the case." M.D. Tenn. Local R. 54.01(b)(3) (emphasis added). Indeed, the starting point for the lodestar method is the number of hours billed, and this information is absent from the plaintiffs' records. Moreover, information regarding which attorney worked on which task is necessary to allow the court and the defendant to assess the reasonableness of the fees.

The defendant argues that the court should reduce the plaintiffs' fee award because of the insufficiency of their billing records. Instead, the court will allow the plaintiffs to submit additional billing records that list the timekeeper and the amount of time for each billing entry. The court will defer final judgment on the plaintiffs' motion until the plaintiffs have made this submission. For the remainder of this Memorandum, however, the court will assume that the additional billing records will show that $148,793.50 is, in fact, a reasonable lodestar amount for the listed billing entries.

Next, the defendant argues that the plaintiffs' fees should be reduced because plaintiff Willarene Fisher did not prevail on her claims. (Docket No. 206 at 6-7.) A portion of the plaintiffs' efforts at trial and throughout this litigation were spent on Fisher's claims, of course, and the plaintiffs' billing records contain certain entries that relate solely to Fisher. (*E.g.*, Docket No. 204, Ex. 1 at 10 ("Deposition of W. Fisher."), 12 ("Prepare deposition summary of W. Fisher").)

The court agrees that Fisher is not a prevailing party and is not entitled to an award of attorney's fees, because the jury found against her on both of her claims at trial. It would be difficult or impossible, however, to segregate and precisely calculate the amount of time spent by the plaintiffs' attorneys on Fisher's claims. Instead, because there are seven plaintiffs, the court will reduce the plaintiffs' requested fees and costs by one-seventh, to reflect the approximate share attributable to Fisher's claims.[2]

Finally, the defendant argues that the plaintiffs' fees should be reduced because, although six of the plaintiffs prevailed on their "medical examination" ADA claims, the plaintiffs' other claims were dismissed before trial. (Docket No. 206 at 4-6.) It argues that the plaintiffs are not entitled to recover fees attributable to these unsuccessful claims.

In *Mann v. Acclaim Financial Services, Inc.*, 348 F. Supp. 2d 923 (S.D. Ohio 2004), the court offered a useful overview of the relevant law:

> The extent of a plaintiff's overall success is a factor that must be considered when determining the amount of attorney fees to award. Attorney's fees should be reduced if the prevailing plaintiff has achieved only partial or limited success. According to the United States Supreme Court, if a plaintiff prevails on only some of her claims for relief, the court must address the following issues: (1) whether the plaintiff failed to prevail on claims that were unrelated to the claims on which the plaintiff succeeded and (2) whether the plaintiff achieved a level of success that made the hours reasonably expended a satisfactory basis for making a fee award. In determining a reasonable fee, the court should exclude the hours spent by the attorney litigating unrelated claims on which the plaintiff failed to prevail.

---

[2] The court finds that the plaintiffs' costs should be reduced for the same reasons that their attorney's fees should be reduced.

6

> The rationale behind this rule is that work on an unsuccessful claim is not deemed to have been "expended in pursuit of the ultimate result achieved." Where a lawsuit consists of related claims, a plaintiff achieving limited success should be awarded only fees that are reasonable in relation to the results obtained. However, in the case of a plaintiff who has won substantial relief, the award of attorney's fees should not be limited merely because the court did not adopt each and every contention raised.

*Id.* at 930 (citing, *inter alia*, *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 910 (6th Cir. 1991)) (citations and footnote omitted and paragraph break added). The *Mann* court further noted that "a court should not reduce attorney fees based on a simple ratio of successful claims to claims raised." *Id.* at 930 n.7.

Here, although the six prevailing plaintiffs successfully recovered on their § 12112(d)(4) "medical examination" claims, their other claims were unsuccessful. Specifically, all six plaintiffs pursued disability discrimination claims under the ADA; the court dismissed those claims at summary judgment because it determined that the plaintiffs were not "disabled." All six plaintiffs pursued breach of contract claims, and three of them pursued privacy tort claims; the court dismissed those claims at summary judgment, finding that they were "plainly without merit." (Docket No. 77 at 28.) Finally, five of the plaintiffs initially asserted age discrimination claims, which they voluntarily dismissed nearly a year after this suit was filed. All of these claims were conceptually distinct from the plaintiffs' "medical examination" ADA claims, and the plaintiffs were not merely pursuing them as claims in the alternative. Furthermore, the parties spent substantial effort litigating the claims that were dismissed at summary judgment.

In addition, two of the plaintiffs secured judgments at trial that were nominal or relatively insignificant. Richard White received a nominal award of $1, and Velma Sue Bates received a

total award of only $6,400. Both White and Bates sought to recover much larger amounts; in light of this, a reduction in fees is proper. *Shore v. Fed. Express Corp.*, 42 F.3d 373, 381 (6th Cir. 1994) (affirming a reduction of fees because the plaintiff "sought to receive substantially more front pay than the court awarded").

Therefore, because only four of the plaintiffs secured substantial relief, and because even those four plaintiffs pursued a number of unsuccessful claims, the court will further reduce the plaintiffs' fees and costs by 20 percent. The court finds that this is an appropriate reduction, given the nature of the various claims initially asserted by the plaintiffs and the ultimate result of this litigation. *See Hensley*, 461 U.S. at 436-37 ("There is no precise rule or formula . . . . The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."); *Scales*, 925 F.2d at 910 (reducing a Title VII plaintiff's attorney's fees by 50 percent because, although she prevailed on her discrimination and retaliation claims, her constructive discharge and Equal Pay Act claims were unsuccessful).

Overall, then, assuming that the additional billing records submitted by the plaintiffs show that the hours and rates for each billing entry are reasonable, the court will award the plaintiffs a total of $109,538.55 in attorney's fees and costs.[3] The court finds that none of the twelve *Johnson* factors, *see Reed*, 179 F.3d at 471 n.3, merits an upward or downward adjustment of this figure.

---

[3] The attorney's fees and costs requested by the plaintiffs total $159,743.72. Reducing that by one-seventh leaves $136,923.19; a further 20 percent reduction of that figure leaves $109,538.55.

## CONCLUSION

The plaintiffs are hereby **ORDERED** to submit, on or before August 29, 2011, additional billing records that reflect both the timekeeper responsible for each billing entry and the time spent on each entry. The defendants shall have until September 12, 2011 to file any objections based on the additional information contained in those records. If the court ultimately determines that the hours and billing rates reflected in the billing records are reasonable, the court will award the plaintiffs $109,538.55 in attorney's fees and costs, for all of the reasons discussed above.

It is so Ordered.

Entered this 19th day of August 2011.

_____
ALETA A. TRAUGER
United States District Judge