UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| VELMA SUE BATES, CLAUDIA BIRDYSHAW, WILLARENE FISHER, MARK LONG, JON TOUNGETT, CAROLYN WADE, and RICHARD WHITE,<br><br>  Plaintiffs,<br><br>v.<br><br>DURA AUTOMOTIVE SYSTEMS, INC.,<br><br>  Defendant. | Case No. 1:08-0029<br>Judge Trauger |

## MEMORANDUM

Pending before the court is the defendant Dura Automotive Systems, Inc.'s Renewed Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial (Docket No. 209), to which the plaintiffs have responded (Docket No. 213). For the reasons discussed herein, this motion will be denied.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This case, in which the plaintiffs, among other things, challenged the drug-testing protocol at their former place of employment – the defendant's Lawrenceburg, Tennessee, manufacturing facility – under Section 12112(d)(4)(A) of the Americans with Disabilities Act (ADA), has involved two rounds of summary judgment briefing, two rounds of Motion to Reconsider briefing, and a ruling on an interlocutory appeal from the Sixth Circuit. (*See* Docket Nos.77, 84, 90, 97, and 116.) Therefore, the relevant factual and procedural background has been exhaustively discussed, and familiarly with that background will be presumed.

1

The trial in this case was held on July 12-20, 2011, with six plaintiffs, whom the court had previously determined were not "disabled," asserting their lone remaining Section 12112(d)(4)(A) claim and plaintiff Fisher also asserting a Section 12112(d)(4)(A) claim, along with a "disability discrimination" claim. To establish the Section 12112(d)(4)(A) claim at trial, the proof had to sufficiently show that the drug-testing protocol involved a "medical examination" or "disability-related" inquiry, which was not "job-related" and "consistent with business necessity" and which caused damage to the plaintiffs. (*See* Docket No. 166 at 6 citing 42 U.S.C. § 12112(d)(4)(A) and *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1216 (11th Cir. 2010), which stated that a plaintiff must show damages to recover on a Section 12112(d) claim)).

In instructing the jury at the close of the trial, the court concluded that the "drug testing" in this case, to which all plaintiffs were subjected, involved "medical examinations" and "disability related inquiries." (Docket No. 194 at 17.) The jury then found that the drug testing was not "job-related and consistent with business necessity." (Docket No. 195 at 1.) The jury awarded compensatory and punitive damages in varying amounts to plaintiffs Bates, Birdyshaw, Long, Toungett, and Wade, awarded plaintiff White $1.00, and determined that plaintiff Fisher had not sustained any damages.[1] (Docket No. 195.)

On August 16, 2011, Dura filed its motion for post-trial relief.

---

[1] The jury also found in favor of Dura on Fisher's disability discrimination claim. (Docket No. 195 at 7.) Aside from challenging the general imposition of punitive damages, the defendant does not, in this motion, challenge the specific damage awards. In a separate motion, Dura seeks a reduction in Wade's award, arguing that it exceeds the statutory cap. (Docket No. 208.) This motion is still pending a response from the plaintiffs.

## ANALYSIS

Following the adverse jury verdict at trial, the defendant has timely moved for judgment as a matter of law under Fed. R. Civ. 50(b), or, alternatively, for a new trial under Fed. R. Civ. P. 59(a). (Docket No. 209.)

In support of these motions, the defendant contends that: (1) the court erred in finding and then instructing the jury that, as a matter of law, the drug-testing protocol involved "medical examinations" and "disability-related inquiries" of the plaintiffs; (2) punitive damages are not appropriate in this case; (3) the jury instruction on "agency" was erroneous; (4) as the plaintiffs were not "disabled," they are not entitled to relief; and, finally, (5) the verdict was against the weight of the evidence. (Docket No. 210.)

**I.      Standards of Review (Post Trial Motions)**

    **A.      Rule 50(b)**

A motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) may only be granted where, in viewing the evidence in the light most favorable to the non-moving party, no genuine issue of material fact remains for the jury, and all reasonable minds would necessarily find in favor of the moving party. *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001). That is, here, viewing the evidence in the light most favorable to the plaintiffs, Dura must show that the evidence in support of its position on the relevant issue was so overwhelming that no reasonable factfinder could find in the plaintiffs' favor. *Patton v. Sears, Roebuck & Co.*, 234 F.3d 1269, 1269 (6th Cir. 2000).

    **B.      Rule 59(a)**

While a new trial can be ordered for a wide variety of reasons, generally, a court may

3

grant a new trial under Fed. R. Civ. P. 59(a) "if the verdict is against the weight of the evidence, if the damages award is excessive, or if the trial was influenced by prejudice or bias, or otherwise unfair to the moving party." *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000). The burden of demonstrating the necessity of a new trial is on the moving party, and the ultimate decision whether to grant such relief is a matter vested within the sound discretion of the district court. *Clarksville-Montgomery Co. Sch. Sys. v. U.S. Gypsum Co.*, 925 F.2d 993, 1002 (6th Cir. 1991). Here, based on the defendant's briefing, the relevant considerations are whether the verdict and punitive damages award were against the weight of the evidence and whether certain jury instructions should have been given.

First, in deciding a motion for a new trial based on the proposition that the verdict or award is against the weight of the evidence, a trial court may compare and weigh the opposing evidence. *Conte,* 215 F.3d at 637. It may not, however, set aside a jury's verdict simply because the court might have reached a different conclusion or might have drawn different inferences; the jury's verdict should be accepted if it "could reasonably have been reached." *Id*. Second, a new trial should be granted due to an incorrect or deficient jury instruction where such instruction makes the instructions, as a whole, misleading or legally inadequate. *Arban v. West Publishing Group*, 345 F.3d 390, 404 (6th Cir. 2003); *Rivet v. State Farm Mut. Auto. Ins. Co.*, 316 Fed Appx. 440, 446 (6th Cir. 2009).

## II.  Dura's Arguments

### A.  The Character of the Drug-Testing Protocol

First, Dura moves for judgment as a matter of law under Rule 50(b), arguing that its drug-testing protocol did not, as the court found and instructed the jury, subject the plaintiffs to a

4

"medical examination" and/or a "disability-related inquiry" under the ADA. (Docket No. 210 at 2.)

As even a cursory review of the court's previous rulings in this case indicates, this is heavily trodden ground and the basis for concluding that the defendant's drug-testing protocol subjected the plaintiffs to a "medical examination" and/or a "disability-related inquiry" is clear. At trial, consistent with the record as discussed in previous memoranda, the plaintiffs testified that they were each subjected to an "initial panel test," which tested for both legal and illegal substances, as a condition of their continued employment with Dura.[2]

In its March 30, 2011 Memorandum that ruled on the parties' second round of summary judgment briefing, the court concluded that, in light of the language of the ADA, the limited case law interpreting Section 12112(d)(4)(A) and EEOC compliance materials, the plaintiffs had a "very strong argument" that the drug-testing protocol, which included the "initial panel" urine test for substances found in legal drugs, constituted a "medical examination."[3] (Docket No. 116 at 12.) The court simply deferred making the "medical examination" finding as a matter of law until the close of proof at trial. (*Id.*) There was simply no evidence or showing at trial to sway the court from this anticipated legal conclusion and, in simply recycling old argument here, Dura

---

[2]In discussing the evidence presented at trial, the court is relying on its recollection, notes from the proceedings, and the parties' post-trial briefing.

[3]The court stated, "[t]he compliance materials define a 'medical examination' as any procedure or test that 'seeks information about an individual's physical or mental impairments or health,' and includes as examples 'blood, urine, and breath' analyses for legal substances, such as alcohol" and noted that, while "the ADA explicitly removes a test for illegal drugs from the ambit of a 'medical examination,' . . . the limited case law on this issue suggests that a test that would potentially sanction legal (along with illegal) prescription drug use, as was used here, constitutes a 'medical examination' under the ADA." (Docket No. 116 at 9-10)(citations omitted).

has not come close to meeting its burden under Rule 50(b) on this issue.

As to the issue of whether the plaintiffs were subjected to a "disability-related inquiry," the court has been more circumspect in previous memoranda, suggesting that the case for a "medical examination" having been performed was more clear. (See Docket No. 116 at 9-12; Docket No. 97 at 11.) However, as discussed in the March 30, 2011 Memorandum and as confirmed by the evidence at trial, the plaintiffs were subjected to questions or inquiries – at the behest of their employer – about lawful drug use, usually following the failed initial panel test. (Docket No. 116 at 11.) The EEOC compliance materials, which, in the absence of clear case law on the issue, both sides have relied upon at various points in this litigation, have defined those questions to be "disability-related inquiries." (*See id.*) In light of this, there is clearly a legally sufficient basis for the court's conclusion (and jury instruction) that the defendant's drug-testing protocol subjected the plaintiffs to "medical examinations" and "disability-related inquiries" under Section 12112(d)(4)(A) of the ADA. Therefore, the defendants' Rule 50(b) motion on this point will be denied.[4]

### B. Punitive Damages

---

[4] Additionally, Dura argues that the court's finding and instruction on the character of the drug-testing protocol was improper because "Dura's drug testing should be classified as a 'qualification standard'" under Section 12112(b)(6) of the ADA. (Docket No. 210 at 11.) This issue was exhaustively analyzed in the court's December 15, 2010 Memorandum that granted the plaintiff's Motion to Reconsider. (Docket No. 97.) There, the court ruled that the testing – the parameters of which have never been disputed – could be challenged under either Section 12112(d)(4)(A) or Section 12112(b)(6), although relief under Section 12112(b)(6) was not available to most of the plaintiffs in light of the Sixth Circuit's ruling in this case that only "disabled" individuals could seek relief under that provision. (*See id.*) Nothing that occurred at trial justifies a departure from the legal conclusions reached in the December 15, 2010 Memorandum.

6

Case 1:08-cv-00029   Document 215   Filed 08/29/11   Page 6 of 12 PageID #: 4752

Dura also argues that, pursuant to Rule 50(b), it is entitled to a legal determination that punitive damages are not appropriate in this case.[5] (Docket No. 210 at 5.) As Dura points out and consistent with the instructions given to the jury in this case, in order to sustain an award of punitive damages in an ADA case, the plaintiff must show that the employer engaged in its discriminatory practices with "malice or with reckless indifference" to the plaintiff's "federally protected rights." (*Id*. citing 42 U.S.C. § 1981a(b)(1); Docket No. 194 at 31.) Stated another way, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law." *Kolstad v. Am. Dental Ass'n*., 527 U.S. 526, 535 (1999).

Dura argues that there was no proof adduced at trial that "Dura knew or was aware of any risk that its actions would violate the ADA." (Docket No. 210 at 6.) Dura points to the testimony it offered at trial that its challenged program was drafted with the assistance of outside counsel, that Dura attempted to comply with the Tennessee Drug-Free Workplace Act, and that it enlisted the support of a third-party professional drug-testing company, Freedom From Self (FFS), to conduct the actual testing. (*Id*.) In response, the plaintiffs argue that (1) Dura did not successfully comply with various notice provisions of the Tennessee Drug-Free Workplace Act and (2) the drug-testing protocol, which inflexibly required termination for continuing, legal prescription drug use, without regard to employee performance or medical clearance to work while taking the relevant drug, was malicious. (Docket No. 213 at 4-7.)

The award of punitive damages in this case was not improper. Multiple plaintiffs

---

[5]Later in its brief, Dura also argues that the award of punitive damages was against the weight of the evidence and justifies a new trial. (Docket No. 210 at 18-19.) As discussed below, the court rejects Dura's punitive damages arguments, finding that the jury reasonably awarded punitive damages.

7

testified that, from their experience working for Dura and from their experience with Dura's drug-testing protocol, the most likely explanation for such a severe policy was that Dura was attempting to "run off" older employees with higher medical and prescription drug costs. This notion was supported by (1) the general proposition that the relevant Dura officials, despite having no medical background whatsoever, refused to consider individual circumstances or medical authorizations stating that the plaintiffs could continue to safely work while on the prescription medications and (2) by specific testimony such as that of plaintiff Long, who stated that he failed the initial panel test while working on an important project, and, therefore, he was allowed to keep working despite being on "banned" substances. He was only terminated following a "random" test given after the completion of the project.

If the jury afforded significant weight to this testimony, the jury could have reasonably concluded that Dura acted with "reckless indifference" to the plaintiff's federally protected rights. That is, while Dura may not have known, to a certainty, that an economically motivated policy that guaranteed the firing of those with significant and continuing prescription drug costs violated the ADA, the policy was sufficiently structurally devoid of consideration for the plaintiffs' rights under the ADA that punitive damages are appropriate. Therefore, the court will deny the defendant's Rule 50(b) motion on this issue.

### C. Agency Jury Instruction

Under Rule 59(a), Dura seeks a new trial, arguing that the court's jury instruction on the "agency" relationship between FFS and Dura was inappropriate. (Docket No. 210 at 7.) The challenged instruction informed the jury that, as a matter of law, FFS and its employees were agents of Dura and, "with regard to the drug testing of the plaintiffs," acts of FFS and its

8

Case 1:08-cv-00029 Document 215 Filed 08/29/11 Page 8 of 12 PageID #: 4754

employees should be considered the acts of Dura. (Docket No. 194 at 13.)

An "agent is one who consents to act on behalf of another and subject to the other's control." *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 996 (6th Cir. 1997). In the employment discrimination context, an agency relationship is usually only relevant where the entity subject to control is an "agent with respect to employment practices." *Id.*

Dura argues that FFS cannot be considered an agent here because it did not "exercise duties typically reserved for an employer," that is, FFS performed a limited function for Dura – conducting drug testing and reviewing medications taken by Dura employees – but it did not have "any legal control over the employment decisions at issue in this case . . . and had absolutely no influence or control over the Plaintiffs positions at Dura and what was to occur if they each failed the drug test." (Docket No. 210 at 8-9.)

Dura's argument takes the issue far afield. The basic issue is whether the jury was correctly instructed that FFS was Dura's agent for purposes of the drug testing. That is, did FFS "consent to act on behalf" of Dura and was FFS "subject to" Dura's control when it came to the drug-testing protocol, which was "an employment practice" of Dura. The answer from the testimony adduced at trial is obvious. The facility's senior management did not have the capability to administer a drug-testing protocol, so they hired FFS to administer the protocol and report the results. Dura controlled who was tested, when they were tested, what drugs were tested for, and every other relevant aspect of the testing. FFS was Dura's agent for purposes of the drug testing, and there was nothing improper about the court's instruction.

  D.  **Lack of Disability Bars Award**

In the December 15, 2010 Memorandum, guided by the Sixth Circuit's opinion in this case, the court concluded that, although the plaintiffs (aside from Fisher) did not have a colorable claim that they were "disabled" under the ADA, all plaintiffs could still pursue a Section 12112(d)(4)(A) claim at trial. (Docket No. 97.) On July 5, 2011, a week before the trial was to begin and well outside the dispositive motion period, Dura moved for leave to file a Motion to Dismiss, which would assert a new theory as to why non-disabled plaintiffs could not recover on Section 12112(d)(4)(A) claims. (See Docket No. 170.)

In a Memorandum issued that day, the court denied the Motion for Leave as futile. (Docket No. 177.) The court cited the ample case law from around the country holding that a non-disabled plaintiff could assert and recover on a claim under Section 12112(d) and concluded that the right to recover damages as a non-disabled plaintiff under Section 12112(d) was well recognized. (*Id*. at 2-5 collecting cases). Now, Dura simply re-argues the exact point that the court rejected just weeks ago. (Docket No. 210 at 12-16.) In rejecting this argument, the court refers the defendant to the July 5, 2011 Memorandum.

### E. Weight of the Evidence

In a brief, concluding argument, Dura maintains that the "clear weight of the evidence showed that" the drug-testing protocol was "job-related" and "consistent with business necessity" and, therefore, did not run afoul of Section 12112(d)(4)(A). (Docket No. 210 at 17 citing *Wice v. GM*, 2008 WL 5235996, *3 (E.D. Mich Dec. 15, 2008), which concluded that, to meet this standard, the "examination or inquiry must be a reasonably effective method of achieving the employer's goal.") Dura maintains that the evidence at trial showed that the Lawrenceburg facility had problems with drug use and was a "vibrant, active and mobile

10

workplace," where an employee's "command of [] mental activity and motor skills" was required in order to work safely. (*Id*.) Recognizing this, Dura instituted a program that simply "prohibited the use of certain drugs that are known to carry an identified risk of impairment." (*Id*.)

While the defendant is correct that the evidence presented at trial showed some foundation for Dura's drug-testing protocol, the jury's conclusion that the protocol was not "consistent with business necessity" still reasonably could have been reached. Indeed, in requiring the termination of any employee who continued to use certain legal prescription drugs, the jury could have reasonably concluded that the protocol entirely ignored common sense considerations that should have been taken into account, including whether the employee's physician cleared the employee to work at the facility while on the relevant drug and the specific employee's safety record. In short, a reasonable jury could certainly have concluded that it was not a "business necessity" to ban, without any consideration of individual circumstances, employees using legally prescribed prescription drugs. Therefore, Dura's argument that the jury's finding in this regard was against the weight of the evidence is without merit.

## **CONCLUSION**

The arguments advanced in Dura's motion for post-trial relief are all without merit, and, therefore, Dura's Renewed Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

12